UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JORGE FIGUEROA,

                    Plaintiff,

v.                                          Civil No. 2:25cv348

C.H. ROBINSON OPERATIONS, INC.,
et al.,

                    Defendants.

## OPINION AND ORDER

This matter is before the Court on a Rule 12(b)(2) and 12(b)(6) motion to dismiss filed by Defendants C.H. Robinson Operations, Inc.; Robinson Company Inc., C.H.; C.H. Robinson Company Inc.; C.H. Robinson International, Inc.; C.H. Robinson Worldwide, Inc.; and C.H. Robinson Company LLC (collectively, "CHR" or "the CHR Defendants"). ECF No. 5. Because the facts and legal questions are adequately presented in the motion and subsequent briefs, and oral argument would not aid in the decisional process, the Court finds that a hearing is unnecessary.[1] See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J). For the reasons explained herein, the Court **DENIES** CHR's 12(b)(2) motion but **GRANTS** CHR's Rule 12(b)(6) motion. ECF No. 5. Plaintiff's claim against the CHR Defendants is **DISMISSED WITH LEAVE TO AMEND.**

---

[1] Neither Plaintiff nor CHR requested a hearing. See ECF No. 20.

## I. FACTUAL BACKGROUND[2]

This case arises from a March 9, 2023, incident in which Plaintiff suffered injuries while operating a forklift at the Stihl, Inc. ("Stihl"), facility where he was employed. ECF No. 1-2 ¶¶ 29-35. Prior to the incident, CHR "contracted or otherwise agreed to provide transportation, delivery, and related logistics services to Stihl." Id. ¶ 17. To perform that agreement, CHR "hired, selected, and retained interstate carriers," including Defendant Aaron Council ("Council"). Id. ¶¶ 22-23. Council then "hired and made use of employees or agents," including "Defendant [Lamont] Crand[e]ll, Jr. or Defendant [Lamont] Crand[e]ll, Sr." ("Crandell"[3]), to "operate a tractor-trailer . . . in furtherance of the business activities of" Council and CHR. Id. ¶¶ 24-28.

On the evening of March 9, 2023, "Plaintiff began to operate a forklift . . . to transfer the [CHR] Defendants' freight" from the tractor-trailer operated by Crandell "into the Stihl facility." Id. ¶¶ 30-31. While Plaintiff was positioned between the facility's loading dock and the tractor-trailer's rear cargo area, Crandell began to drive the tractor-trailer away from the dock. Id. ¶¶ 32-33. The forklift "immediately tilted forward and crashed into the back of the tractor trailer," then "slammed into

---

[2] The allegations detailed here for the purposes of this motion are taken from the complaint and do not represent factual findings by the Court.

[3] Plaintiff alleges that one (not both) of the Crandells was operating the tractor-trailer during the incident. See ECF No. 1-2 ¶¶ 28, 37-39.

the ground," causing Plaintiff "severe and permanent injuries, as well as lost wages and employment benefits." Id. ¶¶ 34-35.

## II. PROCEDURAL HISTORY

Plaintiff filed suit in Norfolk Circuit Court on February 28, 2025, asserting a single count of negligence against all Defendants, jointly and severally, and demanding a jury trial. Id. at 11-12. Plaintiff claims that Crandell "negligently breached his duties of care to Plaintiff" and that CHR "and/or" Council "are vicariously liable to the Plaintiff through the doctrine of respondeat superior." Id. ¶¶ 38-41. On June 12, 2025, CHR filed a timely notice of removal predicated upon diversity jurisdiction. ECF No. 1 ¶¶ 15-31. Then, on June 20, 2025, CHR filed its motion to dismiss. ECF No. 5. Plaintiff opposed the motion, and CHR replied. ECF Nos. 16, 19. The motion is now ripe for adjudication.

## III. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

A defendant may move to dismiss a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). A court without such jurisdiction has no "power to bring a [defendant] into its adjudicative process" and should dismiss any claim against that defendant. New Venture Holdings, L.L.C. v. DeVito Verdi, Inc., 376 F. Supp. 3d 683, 690-91 (E.D. Va. 2019) (citations omitted).

It is the plaintiff's burden to demonstrate personal jurisdiction once a defendant has challenged it. al-Suyid v.

3

Hifter, 139 F.4th 368, 375 (4th Cir. 2025) (quoting Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016)). However, when such a challenge is raised in a case's infancy, a plaintiff may survive it with "a prima facie showing of personal jurisdiction" based on the "motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." Grayson, 816 F.3d at 268 (citation omitted). To determine if "a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." Id.

This Court generally has personal jurisdiction if Virginia state courts would possess such jurisdiction. ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 176 (4th Cir. 2002). There are two kinds of personal jurisdiction Virginia state courts (and thus this Court) may exercise: "general (sometimes called all-purpose)" and "specific (sometimes called case-linked)." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 358 (2021).

A court possesses general jurisdiction over a defendant whose activities in the forum state are "so constant and pervasive 'as to render [it] essentially at home'" there. Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (citation omitted). The paradigmatic forums with general jurisdiction over a corporation are "its place of incorporation" and its "principal place of business." Ford Motor Co., 592 U.S. at 358-59 (citing Daimler, 571 U.S. at 137).

4

Absent general jurisdiction, a court may exercise specific jurisdiction if (1) it "is authorized by the long-arm statute" of the forum state and (2) "application of the long-arm statute is consistent with" the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009).  "Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause . . . the constitutional inquiry" usually controls.  Id. That inquiry is satisfied if (1) "the defendant purposefully availed itself of the privilege of conducting activities" in Virginia, (2) "the plaintiffs' claims arise out of those activities," and (3) "the exercise of personal jurisdiction would be constitutionally reasonable."  Id. at 278 (citation omitted).

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

A party may also move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding such a motion, the Court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the plaintiff."  Blair v. Appomattox Cnty. Sch. Bd., 147 F.4th 484, 491 (4th Cir. 2025) (quoting Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019)).  But the Court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  Id.  If a

5

complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it must be dismissed. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (construing Fed. R. Civ. P. 8(a)(2)); Turner, 930 F.3d at 644. While this "plausibility standard" is not a "probability requirement," it demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice. Id. (citing Twombly, 550 U.S. at 555).

A plaintiff is not required to negate any putative affirmative defenses, such as preemption, in the complaint. Burrell v. Bayer Corp., 918 F.3d 372, 382 n.3 (4th Cir. 2019). Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may the merits of such a defense "be reached by a [Rule 12(b)(6)] motion to dismiss." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Even then, "the defendant must show 'that the plaintiff's potential [response] to the affirmative defense was foreclosed by the allegations in the complaint.'" L.N.P. v. Kijakazi, 64 F.4th 577, 586 (4th Cir. 2023) (emphasis added) (quoting Goodman, 494 F.3d at 466).

### IV. DISCUSSION

The Court begins with CHR's jurisdictional challenge before addressing CHR's Rule 12(b)(6) motion. Khoshaba v. Stilwell, 749 F. Supp. 3d 572, 595 (E.D. Va. 2024).

### A. Personal Jurisdiction

CHR "does not dispute that the Court may assert personal jurisdiction over C.H. Robinson Worldwide, Inc.," but argues that the Court has neither general nor specific personal jurisdiction over the remaining CHR Defendants. ECF No. 6, at 18-20. In contrast, Plaintiff invokes both general and specific jurisdiction over all of the CHR Defendants. ECF No. 1-2 ¶¶ 13-14.

Plaintiff's invocation of general jurisdiction is meritless. Plaintiff expressly alleges that each of the CHR Defendants is incorporated and maintains its principal place of business (or "principal address") outside of Virginia. Id. ¶¶ 2-7. Plaintiff does not allege this to be "an exceptional case" in which any of the CHR Defendants might nonetheless be "at home" in Virginia. Ford Motor Co., 592 U.S. at 358-59 (quoting Daimler, 571 U.S. at 139 n.19). Therefore, even "tak[ing] the allegations and available evidence . . . in the light most favorable to the plaintiff," Grayson, 816 F.3d at 268, Plaintiff has failed to establish this Court's general jurisdiction over the CHR Defendants.

Accordingly, if the Court is to exercise personal jurisdiction over any of the CHR Defendants, such jurisdiction

7

must be specific, or "case-linked." Ford Motor Co., 592 U.S. at 358. As noted, the Court may exercise such jurisdiction if (1) "the defendant purposefully availed itself of the privilege of conducting activities" in Virginia, (2) "the plaintiffs' claims arise out of those activities," and (3) "the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs, 561 F.3d at 278.

### 1. Purposeful Availment

The Court's analysis of "purposeful availment" is guided "[i]n the business context" by such "nonexclusive factors" as "whether the defendant reached into the forum state to solicit or initiate business," "whether the defendant deliberately engaged in significant or long-term business activities in the forum state," and "whether the performance of contractual duties was to occur within the forum." Id. (citations omitted). Here, Plaintiff has alleged generally that "Defendants" engaged in "the marketing, sale, and distribution of carrier services" and "technology and shipping solution services in Virginia." ECF No. 1-2 ¶ 13. Plaintiff further alleges that "the C.H. Robinson Defendants" — not only C.H. Robinson Worldwide, Inc. — "contracted or otherwise agreed to provide transportation, delivery, and related logistics services to Stihl," which maintains its principal place of business, including "administrative offices, a warehouse, and [a] loading dock," in Virginia. Id. ¶¶ 17-18. According to Plaintiff,

the CHR Defendants "oversaw, coordinated, and controlled transportation services used to deliver equipment, products, and other materials to [and from] Stihl." Id. ¶ 19.   The CHR Defendants also allegedly "hired, selected, and retained" Council to "perform their business" in Virginia. Id. ¶¶ 22-23, 28.

Taking these allegations "in the light most favorable to the plaintiff," as is required at this stage, Grayson, 816 F.3d at 268 (citation omitted), the Court finds that the CHR Defendants "purposefully avail[ed] [themselves] of the privilege of conducting business" in Virginia. Consulting Eng'rs, 561 F.3d at 278; see also Walden v. Fiore, 571 U.S. 277, 285 (2014) ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State . . . ." (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479-80 (1985))); id. ("[P]hysical entry into the State . . . through an agent, goods, mail, or some other means . . . is certainly a relevant contact.").

### 2. Claim Arising From Contacts

Plaintiff's claim must also have "arise[n] out of the activities directed at the forum" by CHR, such that CHR's "contacts with the forum state form the basis of the suit." See Consulting Eng'rs, 561 F.3d at 278-79.

9

Plaintiff's complaint asserts a single claim of negligence against all Defendants, alleging that Crandell, "acting individually and in his capacity as an employee and agent of" the CHR Defendants and Council, "negligently breached his duties of care to Plaintiff" while "delivering products and goods to Stihl" in Virginia. ECF No. 1-2 ¶¶ 30, 38. With all reasonable inferences drawn, as required, in favor of jurisdiction, Plaintiff has sufficiently alleged an injury arising out of the CHR Defendants' contacts with Virginia, including the obligations the CHR Defendants allegedly undertook with respect to Stihl and the contract with Council by which CHR allegedly fulfilled them.

According to CHR itself, "Plaintiff's claim arises from the Contract between [C.H.] Robinson Worldwide, Inc., and [Council]," which suffices to subject C.H. Robinson Worldwide, Inc., to this Court's specific jurisdiction. ECF No. 6, at 19. CHR's challenge to the Court's jurisdiction over the other CHR Defendants thus hinges on CHR's assertion that they are <u>not</u> parties to the CHR-Council contract. ECF No. 6, at 19. But that assertion is difficult to reconcile with the following provision of that contract, an apparent copy of which CHR filed as an exhibit in support of the motion to dismiss[4]:

---

[4] A court may "look beyond the complaint to affidavits and exhibits" in order to dispose of a challenge to personal jurisdiction. <u>UMG Recordings, Inc. v. Kurbanov</u>, 963 F.3d 344, 350 (4th Cir. 2020) (citation omitted).

> This Contract . . . is made and entered into . . . by and between the following named parties:
>
> C.H. Robinson Worldwide, Inc., . . . for itself <u>and on behalf of its affiliated companies and divisions which are also parties to this Contract</u>, collectively hereinafter referred to as "Robinson", and [Council], . . . hereinafter referred to as "Carrier".

ECF No. 6-1, at 1 (emphasis added).  The Court need not construe this provision now, especially given that the parties have not yet briefed their own interpretations thereof.  It is enough to note that this clause may reasonably be read to accord with Plaintiff's allegation that "Defendant Council was . . . hired, selected, and retained by all C.H. Robinson Defendants together."[5]  ECF No. 1-2 ¶ 23.  That allegation, together with other facts Plaintiff has alleged,[6] suffices at this stage to satisfy the second prong of the test for specific personal jurisdiction.

### 3. Constitutional Reasonableness

The third and final prong of that test - constitutional reasonableness – also appears to be satisfied.  At least two factors indicate this forum's jurisdictional "appropriateness." <u>Consulting Eng'rs</u>, 561 F.3d at 279 (enumerating relevant factors).  First, given that CHR does not dispute this Court's personal

---

[5] CHR's financial interest disclosure statements appear to confirm that the other CHR Defendants are in fact "affiliated companies," ECF No. 6-1 at 1, of C.H. Robinson Worldwide, Inc.  <u>See</u> ECF Nos. 3, 4, 8, 10, 11.

[6] These include the alleged contract between Stihl and the CHR Defendants, a separate contact with Virginia from which Plaintiff alleges his injuries to have arisen.  <u>See</u> ECF No. 1-2 ¶¶ 12, 17-19.

jurisdiction over C.H. Robinson Worldwide, Inc., the marginal "burden" on the remaining CHR Defendants of litigating in this same forum is likely limited. Id. Second, Plaintiff has "an interest in obtaining relief from this Court" rather than pursuing a "separate suit" elsewhere. Khoshaba, 749 F. Supp. 3d at 599. Such a suit "could produce a judgment inconsistent with this Court's disposition of the interrelated allegations against" those Defendants – in particular, C.H. Robinson Worldwide, Inc. – "who have not contested this Court's personal jurisdiction." Id.

The Constitution permits, and judicial economy favors, "th[is] Court's resolution of the instant dispute." Id. Accordingly, CHR's motion to dismiss pursuant to Rule 12(b)(2) is **DENIED**.[7] However, this ruling does not preclude CHR from renewing its jurisdictional challenge following any further factual development in this case. Cf. Crawford v. Move Freight Trucking, LLC, No. 7:23cv433, 2024 WL 762377, at *5 (W.D. Va. Feb. 20, 2024).

## B. Failure to State a Claim Upon Which Relief Can Be Granted

With the jurisdictional challenge resolved, the Court may consider CHR's motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). CHR

---

[7] CHR also moved to dismiss "Robinson Company Inc., C.H.," claiming that "it is a misnomer for the C.H. Robinson Company, Inc." ECF No. 5, at 1 n.1. Plaintiff has indicated that he is "amenable to dismissing the misnamed party" if "Defendants still maintain that the companies are the same entity." ECF No. 16, at 1 n.1. Because the Court dismisses all the CHR Defendants pursuant to Rule 12(b)(6), see infra, it need not reach this issue. Counsel are encouraged to resolve it before any amended complaint is filed.

first argues that Plaintiff's factual allegations, in particular those offered to support his vicarious liability theory, are "conclusory" and "insufficient." ECF No. 6, at 1, 13. Separately, CHR maintains that Plaintiff's claim is federally preempted. _Id._

### 1. Vicarious Liability

In CHR's view, Plaintiff has failed to allege facts sufficient to render CHR vicariously liable under the doctrine of respondeat superior. _See_ ECF No. 6, at 4-5, 13-17. The Court agrees. Plaintiff's factual allegations against CHR do not "plausibly give rise to an entitlement to relief." _Iqbal_, 556 U.S. at 678.

### a. Respondeat Superior

Under Virginia law,[8] "the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees." _Sanchez v. Medicorp Health Sys._, 270 Va. 299, 304-05, 618 S.E.2d 331, 334 (2005). However, "the employer of an independent contractor is not liable for" the negligence of "the contractor or his servants." _Id._ (quoting Restatement (Second) of Torts § 409). Four "well established" factors distinguish an employer-employee relationship from an employer-contractor

---

[8] CHR relies on Virginia law "for purposes of resolution of this motion" but purports to preserve "any future argument that another state's law . . . ought to be applied." ECF No. 6, at 14 n.5. Plaintiff argues that "Virginia's tort law will apply" pursuant to Virginia's choice-of-law rules. ECF No. 16, at 8 n.16. Where "the parties [have] proceeded on the assumption that Virginia law governs," the Court is not inclined to proceed differently. _Hatfill v. New York Times Co._, 416 F.3d 320, 330 n.3 (4th Cir. 2005) (applying Virginia law "[a]lthough there was some question whether [the plaintiff's] claims were governed by the law of Virginia or New York").

relationship: "(1) selection and engagement; (2) payment of compensation; (3) power of dismissal; and (4) power to control the work of the individual." McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997).

"The fourth factor, the power to control, is determinative."[9] Id. In evaluating this decisive factor, the court considers "whether the employer has the power to exercise" – regardless of whether or not the employer actually exercised – "control over the means and method of performing the work." Id.; see also, e.g., Norfolk & W. Ry. Co. v. Johnson, 207 Va. 980, 983, 154 S.E.2d 134, 136 (1967) ("[T]he crucial question is whether the [employer] had the right to control not merely results but the progress and details of the work.").

### b. Plaintiff's Allegations

Plaintiff insists he adequately "alleged that the Crandell Defendants were subject to CHR's ultimate direction and right to control, by nature of CHR's agreement with both Stihl Inc. and Defendant Council, governing the terms and nature of the services provided." ECF No. 16, at 9 (citing ECF No. 1-2 ¶¶ 19, 22-25, 28, 30). But the allegations on which Plaintiff relies amount to "naked assertion[s]" of control "devoid of 'further factual

---

[9] The first three factors "are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control." Baker v. Nussman & Cox, 152 Va. 293, 303, 147 S.E. 246, 249 (1929) (quoting Standard Oil Co. v. Anderson, 212 U.S. 215, 225 (1909)).

enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557); see ECF No. 1-2 ¶ 19 (alleging that CHR "oversaw, coordinated, and controlled transportation services"); id. ¶¶ 22-25 (alleging that CHR "hired, selected, and retained interstate carriers to perform [CHR's] business . . . under [CHR's] direction and right of control" and that one of those carriers, Council, in turn "selected" Crandell "with [CHR's] knowledge and approval"); id. ¶ 28 (alleging that Crandell acted "in furtherance of the business activities of" Council and CHR); id. ¶ 30 (alleging that Crandell acted "for the purpose of delivering products and goods to Stihl on behalf of" Council and CHR); id. ¶ 40 (alleging that CHR "and/or Council Transport owned and/or directed and controlled the use of the vehicle driven by" Crandell).

Such "bare assertions" are "not entitled to the assumption of truth" and do not "plausibly suggest an entitlement to relief." Iqbal, 556 U.S. at 680-81 (rejecting as conclusory the complaint's "bald allegations" that "petitioners 'knew of, condoned, and willfully and maliciously agreed to'" a challenged policy, that one petitioner "was the 'principal architect' of" the policy, and that another "was 'instrumental' in adopting and executing it" (citations omitted)). Notwithstanding Plaintiff's conclusory assertion of control, the complaint "makes no factual allegations regarding that control." Mays v. Uber Freight, LLC, No. 5:23cv73, 2024 WL 332917, at *4 & n.6 (W.D.N.C. Jan. 29, 2024). Plaintiff's

complaint does not allege, for example, the means by, manner in, or degree to which CHR was empowered to exercise control over the other defendants. Without allegations of specific facts, "the Court cannot find that such control plausibly existed." Id. Contrast Reitz v. CVY of Alexandria, LLC, No. 1:23cv959, 2024 WL 1356678, at *4 (E.D. Va. Mar. 29, 2024) (concluding that the plaintiff "fail[ed] to specifically allege the parameters of th[e] alleged agency relationship" where the plaintiff "did not provide any specific allegations regarding [the principal's] ability to control" the alleged agent), with McCann v. Everette, No. 3:21cv69, 2021 WL 1951130, at *7 (E.D. Va. May 14, 2021) (finding plaintiffs had "nudge[d] their theory of vicarious liability from the speculative to the plausible" by "alleg[ing] that [the principal] directed [the agent] to use specific means in securing the load," required the agent to "take photographs of the load and send" them to the principal "before commencing the trip," and had the power to "withhold payment and/or fine" the agent "if he failed to properly stack the load or if he delivered the load late").

In opposing CHR's motion to dismiss, Plaintiff does point to a provision of the contract between CHR and Council "setting forth CHR's requirements for any drivers retained by" Council. ECF No. 16, at 12. Plaintiff seems to suggest that this provision affords CHR the right to exercise a degree of control indicative of an employer-employee relationship. Id.

16

The complaint contains no specific allegation that the contract between CHR and Council includes requirements for drivers retained by Council. The absence of such an allegation would generally preclude this Court's consideration of the provision in deciding CHR's motion. See, e.g., Jaguar Land Rover Ltd. v. Bentley Motors Ltd., 388 F. Supp. 3d 665, 669 n.1 (E.D. Va. 2019); Katz v. Odin, Feldman & Pittleman, P.C., 332 F. Supp. 2d 909, 917 n. 9 (E.D. Va. 2004) (deeming it "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss" (citation omitted)). However, the Court "may consider a document submitted by [a Rule 12(b)(6)] movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). The CHR-Council contract appears to satisfy both of these conditions; the contract "is significantly related to [Plaintiff's sole] cause of action" against CHR, and although Plaintiff equivocates as to whether the Court should consider the document,[10] he does not seem to dispute its authenticity. Concord Crossroads, LLC v. Hum. Cap. Res. & Concepts, Inc., No. 1:20cv589, 2021 WL 2402898, at *4 (E.D. Va.

---

[10] Contrast ECF No. 16, at 12 (arguing that the "Defendants . . . helped prove" a fact "via Exhibit 1 to their Motion to Dismiss"), with id. at 11 (arguing that CHR's introduction of "an external document" – the contract - was an "attempt[] to confuse the issues raised on the present Motion").

June 10, 2021) (citation omitted).  To the extent Plaintiff (like CHR) relies on the contract now, the Court sees no reason not to consider it, though the Court will not "credit[]" the contract "over conflicting allegations in the complaint" insofar as Plaintiff stops short of "adopt[ing]" the contract's contents as true.  Goines, 822 F.3d at 167-68.

Nevertheless, the contract provision "Drivers and Equipment," see ECF No. 6-1, at 4, fails to overcome the pleading inadequacies in the complaint itself.  That is so because the provision affords CHR, at most, control over the contracted-for results, rather than "control over the means and method of performing the work" that signifies an employer-employee relationship.[11]  McDonald, 254 Va. at 81, 486 S.E.2d at 301; cf. Schramm v. Foster, 341 F. Supp. 2d 536, 544-45 (D. Md. 2004) ("[A]n employer has a right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an

---

[11] Plaintiff does not plausibly allege that CHR selected or engaged Crandell, paid his compensation, or had the power to dismiss him – other factors that might indicate an employer-employee relationship.  See McDonald, 254 Va. at 81, 486 S.E.2d at 301.  The contract between CHR and Council provides instead that Council, not CHR, "shall exercise exclusive control, supervision, and direction over . . . the persons engaged in providing transportation services" thereunder.  ECF No. 6-1, at 6.  Of course, "conclusory labels in a contract do not preclude an analysis of the parties' actual conduct." McCann, 2021 WL 1951130, at *8 (citing Thaxton v. Commonwealth, 211 Va. 38, 43, 175 S.E.2d 264, 268 (1970)).  But here, Plaintiff has not alleged actual conduct that contradicts this contractual language.

employee." (quoting Taylor v. Local No. 7, Intern. Union of Journeymen Horseshoers, 353 F.2d 593, 596 (4th Cir. 1965))); Jones v. C.H. Robinson Worldwide, Inc., 558 F. Supp. 2d 630, 639 (W.D. Va. 2008) (rejecting vicarious liability where there was no evidence that the broker "could terminate a particular driver, or that it asked carriers to do so, or that [the broker] controlled the details of the carrier's operations, such as its drivers' schedules during a trip, particular routes, or compensation plans"). In short, Plaintiff fails to allege facts on which his vicarious liability theory depends.

### c. The Scope-of-Employment Presumption

In lieu of well-pleaded allegations, Plaintiff claims that by "alleg[ing] the existence of a principal/agent relationship," his complaint "create[d] a 'rebuttable presumption that facts exist (though not specifically pleaded)' that would satisfy the test for vicarious liability." ECF No. 16, at 10 (citation omitted). This argument fails to persuade for at least two reasons.

First, the presumption is inapplicable here. Federal courts generally do not "anchor[] [their] analys[e]s to state law pleading standards." Garver v. Holbrook, 546 F. Supp. 3d 465, 473 (E.D. Va. 2021). This Court's obligation to "apply federal procedural law . . . when exercising diversity jurisdiction over a state law claim" requires reliance on "the pleading standards in Rule 8 and the dismissal standards in Rule 12 . . . rather than Virginia's

rebuttable presumption." <u>B.T. v. Silver Diner Dev., LLC</u>, No. 2:22cv94, 2022 WL 3372755, at *7 n.11 (E.D. Va. Aug. 16, 2022) (quoting <u>York v. Karbah</u>, No. 1:20cv3669, 2021 WL 5998390, at *4 n.3 (D.D.C. Dec. 19, 2021)).

Second, Plaintiff's presumption argument begs the decisive question: whether an employer-employee relationship existed at all. The "test" the presumption satisfies is whether employees "committed tortious acts 'within the scope of [their] duties . . . and in the execution of the service for which [they were] engaged." <u>Parker v. Carilion Clinic</u>, 296 Va. 319, 341, 819 S.E.2d 809, 822 (2018) (citation omitted). When a plaintiff inadequately alleges the existence of an employer-employee relationship, this secondary "scope-of-employment issue" is not even presented. <u>Our Lady of Peace, Inc. v. Morgan</u>, 297 Va. 832, 848, 832 S.E.2d 15, 25 (2019). Plaintiff cannot salvage his conclusory pleadings by invoking this presumption.

The deficiency of those pleadings requires this Court to dismiss Plaintiff's claim against the CHR Defendants pursuant to Rule 12(b)(6).[12] In doing so, however, the Court will grant Plaintiff leave to amend. <u>Stanley v. Bocock</u>, No. 24-1970, 2025 WL

---

[12] Accordingly, the Court declines to decide whether CHR's federal preemption argument might also prevail. That said, the Court doubts that CHR has carried its burden to show "that the plaintiff's potential [response] to [CHR's] affirmative defense [of preemption] was foreclosed by the allegations in the complaint." <u>Kijakazi</u>, 64 F.4th at 586 (quoting <u>Goodman</u>, 494 F.3d at 466).

3455398, at *4 (4th Cir. Dec. 2, 2025) ("District courts should freely grant leave to amend.").

### V. CONCLUSION

For the reasons set forth above, the Court **DENIES** CHR's motion to dismiss on Rule 12(b)(2) grounds but **GRANTS** CHR's Rule 12(b)(6) motion. ECF No. 5.

Plaintiff's claim against the CHR Defendants is **DISMISSED WITH LEAVE TO AMEND** within **twenty-one (21) days** of the issuance of this Opinion and Order.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 11, 2025